IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INARI MEDICAL, INC.,                              )
                                                  )
                    Plaintiff,                    )
                                                  )
        v.                                        )    C.A. No. 24-1023-CFC-EGT
                                                  )
INQUIS MEDICAL, INC.,                             )
                                                  )
                    Defendant.                    )

## MEMORANDUM ORDER

At Wilmington, this 27th day of February 2025:

Presently before the Court is the motion of Defendant Inquis Medical, Inc. ("Defendant" or "Inquis") to stay the case (D.I. 23) pending a decision on Defendant's motion to dismiss (D.I. 11).[1]  For the reasons set forth below, Defendant's motion to stay is DENIED.

## I.    BACKGROUND

On September 11, 2024, Inari Medical, Inc. ("Plaintiff" or "Inari") filed the present lawsuit against Inquis, alleging trade secret misappropriation under California and federal law, intentional interference with contractual relations and infringement of four patents.  (D.I. 1 ¶¶ 106-221).  On November 4, 2024, Defendant filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff failed to adequately plead any of the foregoing claims in the Complaint.  (*See* D.I. 11 & 12).  Shortly after briefing was complete, on January 6, 2025, third-party Stryker announced that it had reached an agreement to acquire Plaintiff for several billion dollars.  (D.I. 24 at 4).  Because both companies are publicly traded, they submitted filings with the Securities and Exchange Commission ("SEC") related to the proposed acquisition.  (*Id.*).  In its Form 8-K filed with the SEC on January 6, 2025, Plaintiff represented

---

[1]        Defendant's motion to dismiss is currently pending before Chief Judge Connolly.

that "[t]here has been no misappropriation of Inari's trade secrets or infringement of its intellectual property in the past three years" and that there is no pending legal proceeding that would have a "material adverse effect" on Plaintiff.  (D.I. 21 at 2; *see also* D.I. 24 at 4-5).[2]  Seemingly spurred in part by this SEC filing, on January 17, 2025, Defendant filed the present motion to stay proceedings pending a decision on its motion to dismiss.  (*See* D.I. 23).  Briefing was complete on February 7, 2025.  (D.I. 34, 35 & 36).

## II.    LEGAL STANDARD

 The decision of whether to stay litigation is a matter left to the Court's discretion. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936); *see also Dentsply Int'l Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990).  In exercising this discretion, courts typically consider and balance three factors:  (1) whether a stay will simplify the issues for trial, (2) whether discovery is complete and a trial date has been set and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party.  *See UCB, Inc. v. Hetero USA Inc.*, 277 F. Supp. 3d 687, 690 (D. Del. 2017); *see also St. Clair Intell. Prop. Consultants v. Sony Corp.*, No. 01-557-JJF, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003).

## III.    DISCUSSION

### A.    Simplification of Issues for Trial

According to Defendant, a stay pending decision on the motion to dismiss would simplify the issues for trial because the entire case would be resolved if the motion to dismiss is granted.  (D.I. 24 at 8).  Yet this case involves claims of infringement of four patents, as well as claims of trade secret misappropriation under federal and state law and a claim for intentional interference

---

[2]    Plaintiff claims those statements were made subject to "confidential disclosure schedules exchanged between Inari and Stryker," in which they did disclose the present litigation. (D.I. 34 at 9).

with contractual relations. (D.I. 1 ¶¶ 106-221). Staying this case pending the motion to dismiss may simplify the issues for trial if the motion results in categorical dismissal of certain claims (*e.g.*, all trade secret and patent infringement claims) or complete dismissal of the case. But these are only possible outcomes of Defendant's motion to dismiss. Wholesale denial of Defendant's motion is another possible outcome – and one in which no issue simplification results from a stay. As is partial dismissal where a large number of claims (*e.g.*, all patent infringement claims) still remain. The likelihood that Defendant succeeds in dismissing all or even most of the claims raised in the Complaint is low. *See Bataan Licensing LLC v. DentalEZ, Inc.*, C.A. No. 22-238, 2023 WL 143991, at *1 (D. Del. Jan. 10, 2023) ("In considering the prospects for simplification, the Court shall assess all of the possible outcomes of the proceeding or inquiry that the case would be stayed in favor of – not just the potential outcome most favorable to the party seeking the stay."). Because of the various and distinct claims asserted in the Complaint, and the possibility for multiple different outcomes, the Court finds that there is only slight potential for issue simplification. And when this slight potential is viewed alongside the fact that leave to amend is to be freely granted, this factor comes out largely neutral.

### B.    Status of the Litigation

Despite Plaintiff having apparently invested "significant time, money, and resources on the issues involved" in this case (D.I. 34 at 16), there has been little progress in the litigation itself. A scheduling order was only entered on February 12, 2025. (D.I. 38). Discovery is just getting underway. (*See* D.I. 26 & 49 (the parties' first sets of requests for production)). That this case is still in its early stages weighs in favor of a stay. *See, e.g.*, *SenoRx, Inc. v. Hologic, Inc.*, C.A. No. 12-173-LPS-CJB, 2013 WL 144255, at *5-6 (D. Del. Jan. 11, 2013) (despite schedule being entered and the parties exchanging some initial discovery, status of litigation favored a stay where "the most significant case events" in litigation were in the future); *Princeton Digital Image Corp.*

*v. Konami Digital Ent. Inc.*, C.A. No. 12-1461-LPS-CJB, 2014 WL 3819458, at *3-4 (D. Del. Jan. 15, 2014).  Contrary to Plaintiff's suggestion, investing resources in pre-litigation activities does not artificially move this lawsuit into a later stage where a stay is less likely to conserve resources.

###### C.  Undue Prejudice or Tactical Advantage

Defendant argues that there is no undue prejudice to Plaintiff from a stay pending decision on the motion to dismiss.  (D.I. 24 at 9-11).  In Defendant's view, because Plaintiff represented in its Form 8-K that it has not suffered any trade secret misappropriation or intellectual property infringement in the last three years, the misappropriation and infringement claims raised in Plaintiff's Complaint are essentially meritless.  (D.I. 24 at 4-7 & 10; *see also id.* at 10 ("Inari told the SEC (and the public at large) that this lawsuit and the alleged conduct in the lawsuit are not reasonably expected to adversely affect Inari's business, operations, or financial condition. . . . Inari has made it clear a brief stay of discovery in this action pending the resolution of Inquis' motion to dismiss will not result in any material harm to Inari.")).  Moreover, because Plaintiff also represented in that Form 8-K that it was not involved in any litigation that would have a material adverse effect on its business, operations or financial condition, Defendant maintains that the present case is of little impact to Plaintiff.  (*Id.* at 10).  As such, Plaintiff will suffer no undue prejudice from a stay in this case.  Defendant also argues that any harm resulting from a stay can be addressed by monetary damages and, further, that denial of a stay would cause Defendant "significant hardship" due to the financial burdens of discovery.  (D.I. 24 at 11).

Plaintiff responds that the timing of Defendant's motion suggests that it is seeking an inappropriate tactical advantage.  (D.I. 34 at 16).  In Plaintiff's view, it is noteworthy that Defendant did not request a stay when it filed the underlying motion to dismiss in November 2024 and instead waited several months before filing the present motion to stay.  (*Id.* at 16-17).  Plaintiff also argues that it would be "severely" prejudiced from a stay in this case, claiming that ongoing

patent infringement and trade secret misappropriation is exacerbated by the direct-competitor relationship between the parties. (*Id.* at 17). According to Plaintiff, the "irreparable competitive harm" it is suffering will only worsen if these proceedings are delayed through a stay. (*Id.* at 18). Plaintiff also argues that its recent Form 8-K has no bearing on the case and that Defendant cannot justify a stay simply because it is smaller and less funded than Plaintiff. (*Id.*).

As an initial matter and contrary to Defendant's argument, the Court is unconvinced that Plaintiff's SEC filing is definitive evidence that it would not suffer prejudice from a stay.[3] Defendant cites a number of cases in its opening brief to suggest that Plaintiff's Form 8-K is relevant evidence that the claims in this case lack merit and that a stay would not be prejudicial. (*See, e.g.*, D.I. 24 at 2 n.2 (citing *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000)); *see also* D.I. 24 at 7 n.6 (citing *Cohen v. Telsey*, No. 09-2033 (DRD), 2009 WL 3747059, at *13 (D.N.J. Nov. 2, 2009))). But those cases stand for the proposition that a court may take judicial notice of SEC filings and, further, that reliance on public SEC filings is reasonable in the context of making investment decisions. The cases do not stand for the proposition that boilerplate statements in SEC filings offer sufficient evidence of the presence (or absence) of litigable harm such that the merits (or lack thereof) of a case are conclusively established.[4] Those same boilerplate statements likewise do not preclude a potential claim of undue prejudice in opposing a stay.

The Court also disagrees that the timing of Defendant's motion necessarily suggests any inappropriate tactical advantage. The earlier that a motion to stay is filed, the less likely the Court is to infer that a delay was impermissibly tactical. *See Ever Win Int'l Corp. v. Radioshack Corp.*,

---

[3]    Whether Plaintiff's Form 8-K contains admissions relevant to the merits of Plaintiff's claims seems to be an issue relating to the motion to dismiss – not the motion to stay.

[4]    This seems especially true where, as here, those public disclosures were apparently made expressly subject to non-public disclosures. (D.I. 34 at 8-10).

902 F. Supp. 2d 503, 508 (D. Del. 2012). Defendant filed the motion to stay about four months after the Complaint was filed and about two months after Defendant filed its motion to dismiss. But the motion to stay in this case seems to have been set off by statements that Plaintiff made in its Form 8-K, and Defendant filed its stay motion eleven days after Plaintiff filed its Form 8-K. (D.I. 21 & 23). In the Court's view, this delay does not lead to the inference that Defendant is seeking an improper tactical advantage. *See, e.g.*, *ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, C.A. No. 12-054-GMS-MPT, 2013 WL 663535, at *5 (D. Del. Feb. 25, 2013) (no inappropriate tactical advantage where stay was requested five months after complaint was filed and three days after a request for *inter partes* reexamination), *report and recommendation adopted*, 2013 WL 1743854 (D. Del. Apr. 22, 2013); *Ever Win Int'l Corp.*, 902 F. Supp. 2d at 508 (no inappropriate tactical advantage where motion to stay was filed about six months after the complaint was filed and three weeks after request for *ex parte* reexamination).

As to Plaintiff's argument that it would be unduly prejudiced by a stay here, the Court ultimately agrees given the parties' relationship in the relevant market. Both parties are healthcare companies and both have developed medical devices that are designed to treat blood clots. (D.I. 1 ¶¶ 2, 3 & 18-27 (Inari's products); D.I. 24 at 3 (Defendant's brief describing Inquis as a "clinical stage medical device company that is primarily focused on improving the management of venous thromboembolic diseases")). Although Defendant's competing product is not yet on the market (D.I. 36 at 8), it does have FDA approval (D.I. 12 at 3) and there is some evidence that Defendant has been marketing its product to physicians and other customers at conferences and online (D.I. 1 ¶¶ 94-95). And neither side disputes that the parties are direct competitors. (*Compare* D.I. 1 ¶ 139 ("Cariquitan breached the Employee Handbook and the Confidentiality Agreement when he engaged in the conduct described in this Complaint, including but not limited to by working for a

direct competitor, Inquis, while employed by Inari."), *and* D.I. 34 at 17 ("Inari would be unduly prejudiced by a stay at least because its direct competitor, Inquis, is currently and actively misappropriating its trade secrets and infringing several of its patents."), *with* D.I. 36 at 6 (Defendant's reply brief not disputing the parties are direct competition).[5] "Courts are generally reluctant to stay proceedings where the parties are direct competitors." *Bos. Sci. Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011). Indeed, courts have recognized that a stay of proceedings in such circumstances can cause erosion of goodwill and loss of market share by prolonging the case longer than necessary. *See, e.g.*, *Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, C.A. No. 14-1192-LPS-CJB, 2015 WL 1737476, at *3 (D. Del. Apr. 9, 2015); *AgroFresh Inc. v. Essentiv LLC*, C.A. No. 16-662 (MN), 2019 WL 2327654, at *3 (D. Del. May 31, 2019). Such consequences can be hard to quantify and a stay encourages those consequences to continue unabated. *See SenoRx, Inc. v. Hologic, Inc.*, 2013 WL 144255, at *9 ("SenoRx has sufficiently demonstrated how it could be unduly prejudiced if, after filing patent infringement litigation against its only competitor in a field defined by 'hard-fought' competition, it was required to wait many years for reexamination proceedings to close and this litigation to conclude.").

Finally, the financial hardship suffered by Defendant in proceeding with discovery is not sufficient to warrant a stay in this case. (D.I. 24 at 11). In addressing the prejudice factor, the Court may consider "whether the moving party would face undue hardship or inequity in the absence of a stay." *FMC Corp. v. Summit Agro USA, LLC*, C.A. No. 14-51-LPS, 2014 WL 3703629, at *6 n.10 (D. Del. July 21, 2014). The Court recognizes that litigation costs money, but this type of economic harm usually does not constitute the type of "undue hardship" relevant under

---

[5]     Although not really addressed by the parties here, there is some evidence that the market lacks other significant competition. (*See* D.I. 14 at 3 n.1 ("Inari had the only FDA-cleared blood return device until clearance of Inquis' Clot Management System.")).

this prong. *See id.* ("Defendants, in articulating the prejudice they face without a stay, have largely focused on the litigation costs involved in proceeding both in this Court and at the ITC at the same time. This type of economic harm, while real, has repeatedly been deemed by this Court not to amount to the kind of 'undue' hardship or inequity referenced in the case law."); *see also Personalized User Model, L.L.P. v. Google, Inc.*, C.A. No. 09-525-LPS, 2012 WL 5379106, at *2 (D. Del. Oct. 31, 2012); *Cooper Notification, Inc. v. Twitter, Inc.*, C.A. No. 09-865-LPS, 2010 WL 5149351, at *2 n.1 (D. Del. Dec. 13, 2010). Therefore, despite the difference in size and means between the parties, the financial burden of discovery on Defendant is not a hardship that shifts the undue prejudice factor in favor of a stay. Undue prejudice continues to weigh against a stay here.

\*      \*      \*

Ultimately, if a stay is granted in this case, court resources will continue to be consumed despite the parties being given the order to stop working. This is especially true if the motion to dismiss results in an amended pleading, which may very well invite further motion practice challenging the sufficiency of new allegations in the amended pleading. Therefore, after balancing the appropriate factors and mindful of the fact that judicial resources will still be consumed during any stay, the Court finds that a stay is not appropriate in this case.

IV. **CONCLUSION**

For the foregoing reasons, Defendant's motion to stay (D.I. 23) is DENIED.

UNITED STATES MAGISTRATE JUDGE